IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | CASE NO. 4:08CR190 |
| v. | § | |
| | § | |
| SHAWN LYNN DAVIS | § | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

The Court has considered Defendant's Motion to Suppress Evidence (Dkt. 80), Defendant's Motion to Determine Admissibility of Statements or Confessions of Defendant (Dkt. 76), and Defendant's Motion to Request Preliminary Hearing on the Admissibility of Evidence of Other Crimes, Wrongs or Acts (Dkt. 74), the motions having been referred to the undersigned by the Honorable Richard A. Schell (*see* Dkt. 89).[1] The Court has considered the record in this matter as well as the evidence and arguments of counsel presented at the October 20, 2009 hearing, and its findings and recommendations are set forth below.

### BACKGROUND

Defendant is charged in this matter with violation of 21 U.S.C. § 846, conspiracy to possess with the intent to distribute cocaine base, and violation of 21 U.S.C. § 841(a)(1), possession with the intent to distribute cocaine base. Defendant has filed a motion to suppress evidence seized during the execution of a search warrant on April 17, 2008 at a home he was leasing at 9805 Nixon Drive in McKinney, Texas.

---

[1]The Court also referred Defendant's Motion to Adopt Pleadings (Dkt. 79), which this Court denied in its September 16, 2009 order.

1

According to the facts before the Court, McKinney police searched the house after conducting a traffic stop involving a man named Vernon Chin who indicated that he had just purchased marijuana from a man named "Red" at a place that was later determined to be Defendant's residence. During the search of Defendant's home pursuant to a search warrant, McKinney police discovered, among other items, illegal drugs, cash, and drug paraphernalia.

In his motion to suppress, Defendant argues that the affidavit in support of the search warrant was based on unreliable information and was not supported by probable cause. In particular, Defendant claims that there was an insufficient connection between an informant's identification of a street number, "9805" and the street name which was provided by a different individual. While he does not specifically identify them, Defendant's motion also argues that some portions of the affidavit supporting the warrant contain material falsehoods.

In addition to his motion to suppress the search of his home, Defendant also filed a Motion Regarding Admissibility of Statements or Confessions of Defendant (Dkt. 76) regarding statements he made to law enforcement officers on two separate occasions: one, on April 25, 2008, prior to his arrest, and one, on or about September 24, 2008, after he was arrested. Defendant does not specify in his motion the nature of these statements or the reasons why they should not be deemed admissible (indeed, Defendant's written motion does not even specify the dates or substance of the statements). However, Defense counsel argued at the hearing before this Court that the pre-arrest statement was made based on bad advice of counsel and promises of leniency and that the post-arrest interview was made without the benefit of counsel, despite Defendant's request. The Government responds that Defendant's first statement was made voluntarily and with the advice of counsel and that the second statement was made after Defendant was given and knowingly waived his *Miranda*

rights.

Finally, Defendant has filed a motion seeking a hearing regarding the admissibility of other crimes, wrongs, or acts (Dkt. 74). Defendant asks the Court to determine the admissibility of any such evidence pursuant to Federal Rule of Evidence 104(a) and the relevancy concerns set forth in Rule 404(b). The Government responds that an instruction to the jury to consider any evidence of extrinsic acts only for a specific purpose is sufficient to address any risks of unfair prejudice. The Court will address each of Defendant's motions in light of the evidence presented and record before it.

## EVIDENCE PRESENTED

At the October 20, 2009 hearing, the Government offered testimony of Officer Woodruff, Officer Ellenburg, and Special Agent Henderson. The Government also offered various pieces of evidence, including the search warrant affidavit, a videotape of the April interview, a transcript of the videotape,[2] and various fingerprint analyses of evidence seized. Defendant offered the testimony of Charlene Nelson and Lon Garner. Defendant himself also testified for the limited purposes of the matters at issue during the hearing.

At the hearing, the Government first offered the testimony of John Woodruff. Woodruff testified that, after conducting a traffic stop and a consensual search of a vehicle on April 17, 2008, the vehicle's passenger, Vernon Chin, told him that he had just purchased marijuana from a nearby residence. Chin said the house had an address of "9805," but he did not know the street name. Chin

---

[2]The Court notes that the transcript of the April 25, 2008 interview submitted by the Government frequently incorrectly attributes statements by Defendant's attorney "Bragg" as those made by Defendant "Davis" and vice versa. The transcript also has some other transcription errors. Therefore, the Court has relied on its review of the video of the interview, rather than the written transcript, for the contents of the interview.

was arrested for possession of marijuana and taken to the police station by another officer. After his arrest, Chin told officers that there was an individual at the address by the name of "Red" who was dealing marijuana and cocaine, that he had purchased drugs from "Red" on two other occasions during that week, and that he knew of others who had purchased drugs from "Red."

While Chin was at the police station, Tosha Gibson, the driver of the vehicle, took Officer Woodruff to the house where Chin purportedly purchased the marijuana; it was on Nixon street and had the numbers "9805" on the front. According to Woodruff, Gibson identified the house at 9805 Nixon as the place where she had driven Chin earlier that evening.

Woodruff then prepared search warrant based on Chin's statements to officers and Gibson's identification of the house on Nixon Street. Woodruff testified that, prior to submitting the search warrant, officers conducted research as to the ownership of the residence at 9805 Nixon. According to Woodruff, records indicated that the home was a rental home occupied by individuals by the name of Damon Carr and Angela Smith. Woodruff conceded that he originally believed Carr and Smith were inside the house and based the warrant on this belief, placing their names (rather than Defendant's) in the affidavit. He stated that he did not learn that Carr and Smith were not residents until the house was forcibly entered pursuant to the search warrant. Woodruff testified that in preparing the affidavit that he had a good faith belief that all of the statements in the affidavit were true and accurate.

After the search warrant was signed by the state court magistrate, Woodruff testified, officers proceeded to the house on Nixon street and forced entry into it. Officer Woodruff observed a black male trying to flee from the house; that individual, Bobby Anderson (a co-defendant in this case),

4

was apprehended by police. Woodruff testified that, when officers entered the house, another black male left out the back door and escaped. Once the house was secured, Bobby Anderson was mirandized and testified that the individual who escaped out of the back door of the house was Defendant Sean Davis.

According to Woodruff, officers found marijuana, crack cocaine, drug paraphernalia, including numerous baggies and scales, and $2,600 in cash in the house located at 9805 Nixon Drive. Officers also found two pieces of indentification inside the house for Defendant Sean Davis as well as a cable bill in his name. Officer Woodruff identified Defendant in the Court and testified that he now knows Defendant Sean Davis to go by the name of "Red."

While McKinney police conducted their investigation, Defendant later appeared voluntarily at the police station on April 25, 2008 to be questioned. According to Woodruff, the meeting was initiated by Defendant's former attorney, Mark Bragg. According to Woodruff's understanding of the interview, Defendant was not under arrest at the time and Defendant's attorney was present with him throughout the interview. Woodruff, however, was not in the room during the April 25, 2008 interview.

Woodruff testified that he was present, however, for a post-arrest interview of Defendant in September 2008. Woodruff testified that, during this post-arrest interview, Defendant never indicated that he wanted to speak to his lawyer, nor did Defendant ask for the interview to stop. Woodruff testified that he could not recall whether Defendant signed a written waiver of his *Miranda* warnings during his post-arrest interview, but stated that Defendant was read his rights and freely and voluntarily waived them.

The Government also called Joe Ellenburg, an officer with the McKinney Police Department. Officer Ellenburg testified that he was contacted by Defendant's prior attorney, Mark Bragg, who indicated that Defendant "wanted to talk" Ellenburg then interviewed Defendant on April 25, 2008 with counsel present and the interview was recorded on videotape. According to Ellenburg, Defendant was not under arrest at that time, and Defendant was not mirandized prior to the April interview. Ellenburg testified that he repeatedly advised Defendant that he was not offering any leniency in exchange for the interview statements and information provided by Defendant. Ellenburg testified that, during this interview, Defendant indicated to him that he was at the house on the evening of April 17, 2008, that he fled out the back door, that he knew about the drugs and that the house was a place where the drugs were held until they were distributed. According to Ellenburg, Defendant freely left the police station after the interview, and the investigation continued.

The Government also offered the testimony of Special Agent Andy Henderson with the D.E.A. Agent Henderson testified that he conducted the post-arrest interview of Defendant on September 24, 2008 and that he read Defendant his *Miranda* rights prior to questioning him. According to Henderson, Defendant appeared to understand and voluntarily waived those rights. No attorney was present, and Defendant did not tell Henderson that he wanted one. Defendant told him that he had fired Mark Bragg and was in the process of retaining a new attorney but had not done so yet. According to Henderson, Defendant indicated that he wanted to talk even without an attorney present. Henderson testified that he was aware that Defendant had at least two prior drug offenses and seemed familiar with his rights and the interview process. Henderson testified that he asked Defendant numerous questions regarding the status of his legal representation and spent several

issues on the attorney issue but that Defendant confirmed that he would like to proceed talking to him. During the interview, Defendant told Henderson that he was the individual who fled out of the house on Nixon Street and told Henderson about his role in the conspiracy to distribute crack cocaine.

In support of his argument that his statements during his post-arrest interview should not be admissible against him, Defendant offered the testimony of Charlene Nelson. Nelson testified that she was with Defendant on the date of his September arrest and that Defendant asked her to contact his lawyer, Lon Garner. According to Nelson, an agent or officer offered her a cell phone so that she could contact the attorney, which she did. Nelson testified that she believed that officers knew that she was locating Defendant's attorney for him.

Defendant also offered the testimony of attorney Lon Garner. According to Garner, he represented Defendant on the date of his arrest in September 2008. Garner testified that he was contacted by Charlene Nelson who told him that Defendant had been arrested. Garner testified that, after some efforts and time in attempting to locate Defendant, he finally located Defendant and was informed that Defendant had already been questioned by law enforcement. Garner testified that he had an attorney-client relationship with Defendant on the date of the arrest, but conceded that he never entered an appearance in this case.

Defendant also testified for the limited purpose of the hearing. According to Defendant, he was advised by his former counsel, Mark Bragg, to meet with the McKinney Police Department in April 2008. Defendant testified that he thought he was meeting with them to help out Cheri Hawkins, who was also apparently in the house on the evening of the search and whom Defendant

7

wanted to help exculpate. Defendant stated that Bragg never advised him that he could be charged or arrested based on the statements he offered during his April interview with Ellenburg.

Regarding his post-arrest interview, Defendant stated that, at the time of his arrest, he had an agreement with Lon Garner to represent him. Defendant testified that, after his arrest, he was handcuffed and unable to reach his cell phone to call his lawyer. He did not recall being read his rights and testified that he asked for an attorney prior to talking to Agent Henderson. Defendant conceded, however, that he did proceed in talking to law enforcement officers after his arrest without an attorney present.

## ANALYSIS

Defendant first challenges the search of the home on Nixon Street, arguing the affidavit supporting the warrant was not based on probable cause. Probable cause is necessary to support the issuance of a valid search warrant. *United States v. Perez*, 484 F.3d 735, 740 (5th Cir. 2007). "Probable cause does not require proof beyond a reasonable doubt, but only a showing of the probability of criminal activity." *United States v. Daniel,* 982 F.2d 146, 151 (5th Cir. 1993). Rather, probable cause is determined through an examination of a totality of the circumstances. *U.S. v. Fields*, 456 F. 3d 519, 523 (5th Cir. 2006). Thus, in determining the validity of this search warrant, this Court must "make a practical, common-sense decision as to whether, given all the circumstances set forth in the affidavit ..., there is a fair probability that contraband or evidence of a crime will be found at a particular place." *United States v. Froman,* 355 F.3d 882, 889 (5th Cir. 2004) (citations omitted).

Having heard all of the evidence presented regarding the origins, investigation and preparation of the search warrant, the Court finds that it was based on probable cause. While Chin did not know the street name of the house where he bought drugs, Gibson was with him when Chin went there and took police there to show it to them. Although the names of the occupants listed in the search warrant were not those of Defendant or any other resident, Chin identified one of the residents as "Red," a name later confirmed to be associated with Defendant. And, the names listed in the affidavit were retrieved from a records search and not the informant Chin. Regardless of the actual name of the residents of the home, the affidavit provided sufficient information to show that a person or persons, including one named "Red," were distributing illegal drugs at 9805 Nixon. Therefore, the Court finds that under the totality of the circumstances, there was probable cause to issue a search warrant for the premises at 9805 Nixon.

Moreover, even if probable cause had been insufficient here – which the Court finds that it was not – having heard the testimony offered, the Court finds that sufficient evidence was presented to show that the officers acted in good faith in relying on the information provided. "The good-faith exception provides that where probable cause for a search warrant is founded on incorrect information, but the officer's reliance upon the information's truth was objectively reasonable, the evidence obtained from the search will not be excluded." *United States v. Cavazos,* 288 F.3d 706, 709 (5th Cir.2002). Officers investigated all of the information provided to them and used that as the basis for their belief that there were illegal drugs in the home. Nothing was presented to the Court to indicate that any of the information contained in the affidavit was deliberately false or misleading. Defendant has not made any showing of bad faith by any law enforcement officer

connected to this case. Therefore, the Court recommends that the District Court **DENY** Defendant's Motion to Suppress Evidence (Dkt. 80).

Next, the Court addresses Defendant's Motion to Determine Admissibility of Statements or Confessions of Defendant (Dkt. 76). Defendant has asked for the Court to determine whether Defendant's statements were voluntarily made and therefore admissible pursuant to 18 U.S.C. § 3501. The Court notes that the constitutionality of this statutory provision in relation to *Miranda* has been placed into question by the United States Supreme Court. *Dickerson v. U.S.*, 530 U.S. 428, 443, 120 S. Ct. 2326, 2336 (2000) ("Section 3501 therefore cannot be sustained if *Miranda* is to remain the law."). And, the Fifth Circuit has not yet reached the extent to which the statutory provision was abrogated by the Supreme Court opinion. *See U.S. v. Guanespen-Portillo*, 514 F.3d 393, 401 (5th Cir. 2008). Nonetheless, as set forth below, the Court has evaluated the admissibility of the statements under the relevant applicable authorities.

As to the April 25, 2008 pre-arrest interview, the Court finds that Defendant's statements to the McKinney Police Department are admissible because he was not "in custody" at that time. In *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed.2d 694 (1966), the Supreme Court held that in order to preserve the Fifth Amendment's privilege against self-incrimination, law enforcement officials must inform a suspect in custody of his right to remain silent, that any statement he makes may be used as evidence against him, and that he has a right to retain counsel or have counsel appointed for him. Generally, statements obtained during a custodial interrogation without the benefit of adequate warnings under *Miranda* are inadmissible. *Missouri v. Seibert,* 542 U.S. 600, 608, 124 S. Ct. 2601, 159 L. Ed.2d 643 (2004); *U.S. v. Stevens*, 487 F.3d 232, 241 (5th Cir.

2007). However, when a defendant voluntarily gives a statement to law enforcement in a non-custodial situation, he need not be advised of his *Miranda* rights. *U.S. v. Courtney*, 463 F.3d 333, 336 (5th Cir. 2006) (citing *Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S. Ct. 711, 50 L. Ed.2d 714 (1977)). For purposes of *Miranda*, an individual is "in custody" when he is "placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *Id.* (quoting *United States v. Bengivenga*, 845 F.2d 593, 596 (5th Cir.1988) (en banc)).

Here, it is undisputed that Defendant had not been arrested on the date of the April 2008 interview (in fact, he was not arrested until some months later). Thus, the Court must evaluate whether a reasonable person in Defendant's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest.

In addition to the testimony presented regarding the interview, the Court reviewed the videotape of the interview in its entirety. Having reviewed the evidence, the Court finds that there was nothing to indicate Defendant's freedom was restrained or restricted in any way. *See, e.g.*, *U.S. v. Courtney*, 463 F.3d 333, 337 (5th Cir. 2006) (Defendant was not in custody during pre-arrest interviews because a reasonable person would not have believed her freedom was restricted to the degree associated with a formal arrest); *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S. Ct. 711, 714 (1977) (holding that a suspect was not in custody where suspect voluntarily came to patrol office after officer requested a meeting, officer advised defendant that he wanted to talk about a burglary and that he believed the suspect was involved, suspect spoke with officer for half an hour, and at end

11

of interview, suspect was released to leave); *see also United States v. Pofahl,* 990 F.2d 1456, 1487 (5th Cir. 1993) (holding that a suspect who invited police officers into his home and voluntarily discussed with officers his involvement in narcotics conspiracy did not first have to be advised of his *Miranda* warnings as he was not in custody). Defendant voluntarily appeared for the interview at the apparent request and advice of his counsel.

In fact, Defendant appears relaxed during the interview and consistently expresses his desire to cooperate, if possible, with authorities, indicating he chose to come to the police station to meet with police to help his friend, Cheri, and to retrieve some of his personal items removed from the house on the evening of the search. A great portion of the time Defendant is in the interview room with his counsel is spent trying to locate the property items that Defendant asked to have returned. At no time during the tape of the interview was Defendant told he was not allowed to leave. He was represented by counsel throughout the entire interview, and, in addition to apparently arranging for the meeting, his counsel assisted in providing many of the statements made about the evening his home was searched. Nothing on the videotape indicates that Defendant's physical freedom was restricted while he made the statements or that the statements were coerced. Additionally, Defendant has offered no evidence or testimony to the Court to suggest that he believed he was under arrest at the time of that interview. Therefore, the Court finds that any statements Defendant made during his April 25, 2008 interview with McKinney police are admissible against him.

Next, the Court turns to Defendant's post-arrest statement to Agent Henderson, of which there is no video recording. Defendant seeks a ruling on the admissibility of those statements, arguing that because he had no counsel present, the statements are inadmissible.

The Fifth Amendment protects an individual's right to be free from compelled self-incrimination. Thus, the Government may use at trial only those confessions that are voluntarily made. 18 U.S.C. § 3501(a); *Malloy v. Hogan*, 378 U.S. 1, 6, 84 S. Ct. 1489, 12 L. Ed.2d 653 (1964). And, as noted above, in order for the Government to introduce Defendant's statement, it generally must prove that the accused voluntarily, knowingly and intelligently waived his *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed.2d 694 (1966). To prove a valid waiver, the Government must show that the relinquishment of the defendant's rights was voluntary and the defendant was fully aware that the right was being waived and the consequences of waiving that right. *Id.*

In this case, it is undisputed that a lawyer was in fact called but that he was not present during the post-arrest interview. Defendant has offered evidence that he asked his friend to call his lawyer upon learning of his arrest, but whether law enforcement officers were aware of or overheard this request is disputed. Defendant argues that his request to call a lawyer should have halted any interrogation. Having heard the evidence presented, the Court finds that, even if Defendant is to be believed that police officers overheard him ask for his attorney to be called, his post-arrest statements made without the benefit of counsel can be used against him. "[W]hen an accused expresses his desire to speak to police only through counsel, he is not subject to further interrogation until counsel is made available to him, *unless the accused initiates further communications with the police*." *Guidry v. Dretke,* 397 F.3d 306, 328 (5th Cir.2005) (citing *Edwards v. Arizona,* 451 U.S. 477, 101 S. Ct. 1880, 68 L. Ed.2d 378 (1981)). Agent Henderson testified that he read Defendant his *Miranda* warnings and that Defendant voluntarily and knowingly waived them. Defendant did not state under

oath that he was not read his warnings; he merely stated he could not remember being given them. The Court finds that he was adequately advised of his rights.

Further, according to Agent Henderson, he spent several minutes discussing with Defendant whether he had an attorney, and Defendant stated that he wished to continue the interview. Defendant himself acknowledged that he had been charged with drug offenses before and was aware of his rights, but that he proceeded to speak with officers without counsel. The Court finds that there is no testimony that would show that Defendant did not freely and voluntarily waive his rights. Therefore, his statements during the September 2009 post-arrest interview are admissible against him. For these reasons, the Court recommends that Defendant's Motion to Determine Admissibility of Statements or Confessions of Defendant (Dkt. 76) be **DENIED** and that Defendant's April and September statements to law enforcement officials were voluntarily made and be admissible against him.

Finally, the Court turns to Defendant's Motion to Request Preliminary Hearing on the Admissibility of Evidence of Other Crimes, Wrongs or Acts (Dkt. 74). In determining the admissibility of extrinsic evidence, the Court must employ a two-part test, encompassing the substance of both Rule 404(b) and Rule 403 of the Federal Rules of Evidence. *U.S. v. Percel*, 553 F.3d 903, 911-12 (5th Cir. 2008) (citing *United States v. Beechum,* 582 F.2d 898, 911 (5th Cir.1978)):

> First, the evidence of "other crimes, wrongs, or acts" must be relevant to an issue other than the defendant's character...Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice.

*Id.* (internal citations omitted). In his motion, Defendant does not specify the other crimes, wrongs,

or acts he wishes to have evaluated for admissibility and relevance. And, at the hearing before the Court, Defendant offered no evidence or argument regarding any other crimes, wrongs or acts to which his motion would apply. Without this information, the Court cannot apply the two-pronged test required by the Fifth Circuit. Therefore, without more specific information about the extrinsic evidence which the Government may attempt to introduce, the Court finds that the motion should be **DENIED** at this time. Without a showing as to potential prejudice, the Court also agrees with the Government that an instruction to the jury will be sufficient to address any of Defendant's concerns. *See U.S. v. Millsaps*, 157 F.3d 989, 993 (5th Cir.1998) ("A prejudicial remark by witness may be rendered harmless by curative instructions to the jury.").

Within ten (10) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(c).

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 22nd day of October, 2009.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE